# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG POPOVICH, | ) | |
| Plaintiff, | ) | Civil Action No. 11-227Erie |
| | ) | |
| v. | ) | |
| | ) | |
| PELICAN LANDING, INC., et al., | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

**M.J. Susan Paradise Baxter**


This civil action was filed in this Court on October 3, 2011. Plaintiff, through his counsel,

brought this copyright infringement action under the Copyright Act, 17 U.S.C. § 101 *et seq*.

alleging Defendants' intentional wrongful use of Plaintiff's original copyrighted artwork. Named

as Defendants are:  Pelican Landing, Inc. d/b/a Pelican Landing II; William H. Singleterry; Mary

C. Singleterry; and MOBS, LLC. ECF No. 1, ¶¶ 1-7.[2]

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.  See ECF Nos. 7 and 8.

[2]  As relief, Plaintiff seeks:  "the entry of an injunction providing that Defendants … be permanently enjoined from copying, reproducing, displaying, promoting, advertising, distributing, or selling any work that infringes Plaintiff's rights in the Original Pelican Drawing, and deliver to Plaintiff all copies of any materials in Defendants' possession, custody or control bearing an image, copy or reproduction of the Original Pelican Drawing; the entry of a seizure order directing the U.S. Marshall [sic] to seize and impound all items possessed, owned, or under the control of Defendants … which infringe upon Plaintiff's copyright; an award in statutory damages pursuant to 17 U.S.C. § 504(c) in the amount of $150,000 for willful infringement of Plaintiff's copyright…"  ECF No. 1, pg. 11-12.

Defendants have filed a motion to dismiss based upon lack of standing and statute of limitations.  ECF No. 9. Plaintiff has filed a brief in opposition to the pending motion. ECF No. 15. This motion is fully briefed and is ripe for disposition by this Court.

### A.  Standards of Review

#### 1)  Motion to dismiss pursuant to Rule 12(b)(1)

In the present case, Defendants move to dismiss for lack of standing. Although briefed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), lack of standing implicates subject matter jurisdiction, and must be analyzed under Federal Rule of Civil Procedure 12(b)(1). Hagan v. United States, 2002 WL 338882, at * 4 (E.D. Pa. 2002) citing Simon v. Eastern KY, Welfare Rights Organization, 426 U.S. 26, 41-42 (1976).

A defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.  Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) citing Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.3d 884, 891 (3d Cir. 1977).  In reviewing a facial attack, which addresses a deficiency in the pleadings, the court must only consider the allegations on the face of the complaint, taken as true, and any documents referenced in the complaint, viewed in the light most favorable to the plaintiff.  Id.; Turicentro, S.A. v. American Airlines, Inc., 303 F.3d 293, 300 (3d Cir. 2002).  "The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right."  Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) citing Bell Atlantic v. Twombly, 550 U.S. 544, 554 (2007).

But when a 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, "we are not confined to the allegations in the complaint and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 754 (3d Cir. 2000).  In reviewing a factual attack, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case ... [N]o presumptive truthfulness attaches to plaintiff's allegations." Carpet Group Int'l. v. Oriental Rug Importers Ass'n., 227 F.3d 62, 69 (3d Cir. 2000) citing Mortensen, 549 F.2d at 891.  The party asserting subject matter jurisdiction bears the burden of proving that it exists. Id.; cf. Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007) ("On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").

### 2)  Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S.  265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:

>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of

truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v.

Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

Several exhibits have been attached to pleadings filed by the parties.  However, the use of these exhibits by this Court does not convert Defendants' motion to dismiss into a motion for summary judgment.  Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an  Federal Rule of Civil Procedure 56 motion for summary judgment.").

### B.      Plaintiff's Allegations

In his complaint, Plaintiff explains that at the time of the events giving rise to this lawsuit, he was the sole owner and operator of DarkHorse Entertainment, LLC, a Florida Limited Liability Company, which is no longer operational.  ECF No. 1, ¶ 1.  DarkHorse was a theming company that provided props, sets, and themed décor for theme parks, resorts, hotels, casinos, restaurants, and motion pictures.  Id.  Plaintiff did all the design work for DarkHorse. Id.

Plaintiff alleges that in late June of 2008, he met with Defendant William Singleterry at the premises of Pelican Landing II, a restaurant and bar, to discuss the possibility of Plaintiff (through his company DarkHorse) designing and installing unique customized themed décor and art work in the restaurant.  Id. at ¶ ¶ 2, 11.

The parties met again on or about July 5, 2008, to discuss the terms and timing of the project.  Id. at ¶ 12.  Defendant William Singleterry and Plaintiff agreed that DarkHorse would create and install unique custom works in Pelican Landing II that included: a wall-to-wall mural of a lake scene, a video projection image for a ceiling mural, lighting effects for a waterfall, a 3-D waterfall, themed concrete bar tops and fascia, bathroom sink vanities, a tiki hut disc-jockey booth, and an original 3-D sculpture of a pelican to be installed on the roof of the building (the "Project").  Id. at ¶ 13.  Plaintiff informed Defendant William Singleterry that Plaintiff would retain all rights to the original designs and artwork for the Project, and also that Defendant would not be charged for any two-dimensional designs or artwork that were created as part of the design process.  Id. at ¶ 14.

On July 8, 2008, Plaintiff returned to his home in Florida and began designing the Project.  Id. at ¶ 17.  By invoice dated July 11, 2008, Plaintiff itemized the specific elements of the Project and listed a total price of $29,142.00.  Id.

During July and August, Plaintiff provided Defendants William and Mary Singleterry with images of the proposed designs for various elements of the Project, including photographs of an image of the three dimensional pelican sculpture that Plaintiff had designed and built for the roof of the restaurant.  Id. at ¶ ¶ 18-19.

By email dated July 15, 2008, Defendant Mary Singleterry inquired of Plaintiff:

> Would it be possible for you to also have the pelican dressed in golf, baseball, football, and beach attire?  I am trying to come up with a logo for shirts and hats for the bar and I wanted the pelican on top of the building to match the shirts.

Id. at ¶ 20.  Plaintiff responded to the email by telephone indicating to Defendant Mary Singleterry that the services covered by the original agreement did not include any two-dimensional artwork for use as a logo and that any two-dimensional designs for the Project

remained Plaintiff's property.  Plaintiff further stated that he would be willing to discuss

providing two-dimensional artwork and designs for logos at additional cost under a separate

agreement.  Id. at ¶ 21.  Around August 15, 2009, Plaintiff reiterated with Defendant Mary

Singleterry that any use of the two-dimensional Original Pelican Drawing would be a separate

negotiation for an additional charge from the existing agreement between the parties. Id. at ¶ 24.

      Plaintiff provided Defendant Mary Singleterry with his original two-dimensional color

hand drawing of a pelican on 8½ x 11 inch paper (the "Original Pelican Drawing") that was the

design for the three-dimensional pelican sculpture called for in the original agreement.  Id. at ¶

25.  Plaintiff also gave Defendant Mary Singleterry a CD containing an electronic image of the

Original Pelican Drawing for her consideration as a potential logo in anticipation of discussing

with her the terms of such use.  Id.  Defendant Mary Singleterry pinned the paper Original

Pelican Drawing to a pegboard behind the bar.  Id.

      At the request of Defendants, Plaintiff provided them with an estimate for the cost of

designing and building two new exterior signs which would bear the image of the pelican as

shown in the Original Pelican Drawing.  Id. at ¶ 26.

      On several occasions, Plaintiff asked Defendants if they wished to discuss the terms for

use of the Original Pelican Drawing as a logo to which Plaintiff was told by Defendant Mary

Singleterry that they "would get back to him." Id. at ¶ 28.  Defendants never got back to Plaintiff

concerning the use of the Original Pelican Drawing as a logo nor did they return the CD

containing the digital image of the Original Pelican Drawing.  Id.

      On September 13, 2008, just prior to completion of the installation of the original Project,

Plaintiff met with Defendant William Singleterry.  Id. at ¶ 34.  Upon reviewing the final invoice,

Defendant William Singleterry refused to pay any additional monies and fired Plaintiff.  Id. at ¶

35.  As a result of the firing, Plaintiff removed the Original Pelican Drawing from the pegboard behind the bar, along with other tools and materials, and left the premises without being able to locate and retrieve the CD containing the image of the Original Pelican Drawing.  Id. at ¶ 36.

Upon returning to Florida on September 17, 2008, Plaintiff registered his copyright of the Original Pelican Drawing.  Id. at ¶ 37.  The copyright lists the copyright claimant (and the authorship) as "Craig Popovich d.b.a. Darkhorse Themed Entertainment" with rights and permissions granted to "Craig Popovich."  ECF No. 1-1, page 7.

Thereafter, Plaintiff received a letter from Attorney William Gregg on behalf of Defendants, accusing Plaintiff of stealing the Original Pelican Drawing, and threatening legal action.  ECF No. 1, ¶ 38.  The letter accused Plaintiff of "removing certain items […] owned by Pelican Landing," including the Original Pelican Drawing.  ECF No. 1-1, page 9.  The letter demanded, among other things not relevant to this lawsuit, the return of the "8½ x11 inch painting of the pelican" (presumably, the Original Pelican Drawing) prior to the upcoming weekend.  Id.  Furthermore, the letter warned that Plaintiff's failure to meet all demands contained in the letter would subject him to a wide range of monetary damages, all of which would be included in the lawsuit that would be filed.  Id.

Plaintiff responded to Attorney Gregg's letter by telephone and by letter dated September 18th.  ECF No. 1, at ¶ 39.  Plaintiff's letter indicated:

> As to the 8.5" by 11" picture of a pelican, it belongs to me.  As a professional artist, I always retain my original art.  This was my signed and dated original which I had submitted to Mr. Singleterry for consideration only and I have never been compensated for a 2 dimensional representation of a pelican nor was it part of any invoice/contract.  He paid for a 3 dimensional sculpture, not a 2 dimensional drawing.  I have always kept my original art since my college days, while working as a campaign illustrator for the Ohio State Senate, for my personal portfolio.

ECF No. 1-1, page 12.  Plaintiff's letter went on to indicate that Plaintiff would not be meeting

any of Defendants' demands and concluded with: "if you feel it is necessary to commence

litigation against me and my company, I will have to instruct my lawyer to countersue."  Id. at

page 13.  Neither Attorney Gregg nor the Singleterrys ever responded to Plaintiff's letter.  ECF

No. 1, ¶ 40.

      In May of 2011, Plaintiff returned to Pennsylvania to visit family members.  Id. at ¶ 41.

During this visit, Plaintiff discovered that the image of the Original Pelican Drawing had been

reproduced and was being used by Defendants in local newspaper advertisements, on numerous

pages on a website that advertises Pelican Landing II, in the restaurant's menus and on its

placemats, on two new exterior signs in front of the restaurant, and in various print advertising.

Id. at ¶¶ 41-44.  Plaintiff never consented to the copying, reproduction, or use of the Original

Pelican Drawing for any purpose, nor did Plaintiff ever receive any compensation for

Defendants' unauthorized use of the drawing.  Id. at ¶¶ 45-46.


    **C.  Standing**

      Defendants move to dismiss for lack of standing.  For purposes of ruling on a motion to

dismiss for lack of standing under Rule 12(b)(1), this Court "must accept as true all material

allegations of the complaint, and must construe the complaint in favor of the complaining party."

Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 134 n.1 (3d Cir. 2009) quoting Warth v.

Seldin, 422 U.S. 490, 501 (1975).

      The question of standing is a threshold inquiry derived from Article III's "case or

controversy" requirement.  City of Pittsburgh v. West Pennsylvania Power Co., 147 F.3d 256,

264 (3d Cir. 1998).  The party invoking federal jurisdiction bears the burden of establishing

standing.  Raines v. Byrd, 521 U.S. 811, 818 (1997); Lujan v. Defenders of Wildlife, 504 U.S.

555, 561 (1992).  Standing is not merely a "pleading requirement but rather an indispensable part

of the plaintiff's case, each element must be supported in the same way as any other matter on

which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence

required at the successive stages of the litigation."  Lujan, 504 U.S. at 561.  It is Plaintiff's

burden to demonstrate that he has standing.  Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007)

("On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the

elements of standing, and each element must be supported in the same way as any other matter

on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence

required at the successive stages of the litigation.").[3]

Defendants argue that Plaintiff lacks individual standing to bring these claims because the

basis of this civil action is a contract dispute between two companies.  ECF No. 13, pg. 6-7.

Defendants mischaracterize the claims raised in this lawsuit.  As pled in the complaint, Plaintiff

is claiming copyright infringement of artwork for which he holds a copyright - artwork which

was beyond the scope of an original contractual agreement between the parties.[4]  Plaintiff

---

[3]  The Third Circuit has articulated three elements for standing under Article III: 1) the
plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which
is (a) concrete and particularized and (b) actual or imminent, not "conjectural" or "hypothetical";
2) there must be a causal connection between the injury and the conduct complained of—the
injury has to be "fairly traceable to the challenged action of the defendant, and not the result of
the independent action of some third party not before the court"; and 3) it must be "likely," as
opposed to merely "speculative," that the injury will be "redressed by a favorable decision."
Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 484-85 (3d Cir.
1998) quoting Lujan, 504 U.S. at 560-561. Further, the Circuit explained: "While all three of
these elements are constitutionally mandated, the injury-in-fact element is often determinative.
Under it, the plaintiff must suffer a palpable and distinct harm." Toll Bros., 555 F.3d at 137-38
(internal citation omitted).

[4]  The written agreement between the parties is not before this Court.

specifically and repeatedly alleges that any two-dimensional artwork was outside the scope of the written contract.  ECF No. 1, ¶¶ 14, 21, 24, 27.

In order to state a prima facie case of copyright infringement, a plaintiff must establish 1) ownership of a valid copyright and 2) the copying of constituent elements of the work that are original.  Cottrill v. Spears, 87 Fed.Appx 803, at *2 (3d Cir. 2004); Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 290 (3d Cir. 1991).

Here, the copyright registration indicates that rights and permissions for this artwork were granted to "Craig Popovich."  Plaintiff alleges that he has not licensed any rights of the Original Pelican Drawing to any other entity.   At this relatively early stage of the litigation and for the purposes of this motion only, Plaintiff has sufficiently alleged standing to bring a copyright infringement claim. See Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 910 (7th Cir. 2003) (characterizing standing as "a matter of probabilities rather than certainties."). Accordingly, Defendants' motion to dismiss on this basis will be denied.


### D.  Statute of Limitations

Next, Defendants argue that Plaintiff's Complaint is untimely under the Copyright Act of 1976, 17 U.S.C. § 507(b), which provides that: "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim *accrued*." Id. (italics added).  Here, the complaint was filed on October 3, 2011, but the complaint does not allege **when** the Original Pelican Drawing was misused by Defendants.  As Plaintiff points out in his opposition brief, the exact date of the first act of infringement will be the subject of discovery.

The Third Circuit held that the federal discovery rule governs accrual of claims under the Copyright Act.  William A. Graham Co. v. Haughey, 568 F.3d 425, 433 (3d Cir. 2009) (referred to as "Graham I").  The Graham I Court described the discovery rule as requiring that "a cause of action *accrues* 'when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis of the claim.'" Id. quoting Disabled in Action of Pennsylvania v. SE Pennsylvania Transp. Auth., 539 F.3d 199, 209 (3d Cir. 2008) (italics added). [5]

However, later in Graham II, the Third Circuit conducted a more thorough analysis of the definition of accrual, as well as the exact nature and effect of the federal discovery rule.  William A. Graham Co. v. Haughey, 646 F.3d 138 (3d Cir. 2011). The Graham II Court explained:

> As a general matter, a cause of action "accrues" when it has "come into existence as an enforceable claim or right." Black's Law Dictionary (9th ed. 2009). Stated another way, accrual is "the event whereby a cause of action becomes complete so that the aggrieved party can begin and maintain his cause of action." Ballentine's Law Dictionary (3rd ed. 1969). [...]  This is an objective feature of any extant claim: the question is whether all of its elements have come into existence such that an omniscient plaintiff could prove them in court.  At that point the cause of action is "complete," and has therefore accrued.  [...]  Accrual has to do with the existence of a legally cognizable right to obtain a judicially sanctioned remedy, not the practical capacity to file a lawsuit.
>
> * * *
>
> Accrual, as we have said, occurs once events satisfying all the elements of a cause of action have taken place.  At that point, the period prescribed by the applicable statute of limitations ordinarily begin to run – time begins to count against the plaintiff, such that if enough of it goes past he can no longer obtain relief.  [...]  There exist, however, various statutory and judge-made rules that operate to toll the running of the limitations period – that is, "to stop [its] running"; "to abate" it, Black's Law Dictionary (9th ed.), *supra*, or "[t]o suspend or interrupt" it, Balentine's Law Dictionary, *supra*.

Id. at 146-47.

---

[5]  In so holding, the Graham I Court held that the copyright infringement claim accrued in 2004 when the plaintiff discovered the infringement, even though the infringement began in 1992.

The Third Circuit then cited numerous cases (including some from the Supreme Court) in which the term "accrual" and the federal discovery rule were misused[6] and explained:

> We hold that the "accrual" of a cause of action occurs at the moment at which each of its component elements has come into being as a matter of objective reality, such that an attorney with knowledge of all the facts could get it past a motion to dismiss for failure to state a claim. The federal discovery rule then operates in applicable cases to toll the running of the limitations period.

Id. at 149-151 (some internal citations omitted).  The Court then held that Graham's copyright infringement claim "accrued" in 1992 when the first act of infringement took place, but the federal discovery rule operated to toll the running of the limitations period until 2004 when Graham discovered the infringement.  Id. at 152.[7]

With these clarifications on the use of the term "accrual" and the effect of the federal discovery rule, this Court endeavors to use these terms of art precisely and accurately.   In the present case, the parties disagree as to whether the lawsuit was filed within the statute of limitations.  Using Graham II as the guideline for our analysis, Plaintiff's claim accrued the first time Defendants misused the digital image of the Original Pelican Drawing,[8] i.e., the date on which all the "elements [came] together into existence such that an omniscient plaintiff could prove them in court."  Id. at 146.  This date does not appear in the complaint as Plaintiff does not know the date upon which Defendants began allegedly infringing his work.  ECF No. 15, pg. 5.

_____

[6]  The Third Circuit described the confusion of the terms as "a misapprehension of the nature of the discovery rule – albeit one that is quite common and that we ourselves have, unfortunately, helped to propagate."  Graham II, 646 F.3d at 146.

[7]  Importantly, Graham II did not abrogate the holdings of Graham I.

[8]  The first act of infringement cannot possibly be the date upon which Defendant Mary Singletary hung the paper Original Pelican Drawing on the pegboard behind the bar, as Defendants argue, since the infringement of a copyright cannot occur until after the item has been copyrighted.

Next, this Court must analyze whether the federal discovery rule tolls the statute of limitations in order that the October 2011 filing of the complaint is timely. That inquiry focuses on the question of whether Plaintiff "should have known of the basis for [his] claims [, which] depends on whether [he] had sufficient information of possible wrongdoing to place [him] on inquiry notice or to excite storm warnings of culpable activity." Graham I, 568 F.3d at 438, quoting Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 400 (3d Cir. 2006). Defendants bear the burden of demonstrating such "storm warnings of culpable activity" and, if they do so, the burden then shifts to Plaintiff "to show that he exercised reasonable due diligence." Id.

In their Brief in Support of the Motion to Dismiss, Defendants argue that Plaintiff had adequate warnings of potential acts of infringement to put him on notice prior to September 18, 2008, at the latest, and that Plaintiff failed to exercise reasonable due diligence thereafter. ECF No. 13, pg. 4. Defendants point to the following factual allegations. Plaintiff gave the Original Pelican Drawing to Defendants in both paper and digital format on August 15, 2008 and the paper drawing was immediately posted on a pegboard behind the bar. Thirty days later, following a contract dispute, Plaintiff left the jobsite at Pelican Landing II taking the paper drawing from the wall behind the bar. By letter dated September 16, 2008, Defendants, through their counsel, demanded the return of the paper version of the Original Pelican Drawing. Although Plaintiff responded to that letter by asserting that the Original Pelican Drawing belonged to him, Defendants argue that Plaintiff failed to inform them of his copyright filing and failed to demand the return of the digital version of the Original Pelican Drawing.

Plaintiff's awareness that the business relationship between the parties ended badly is not enough to provide the "storm warnings of culpable activity" in regard to the artwork as "[t]here

is no presumption that failed business relationships inevitably will give rise either to tortious conduct or disregard of proprietary rights." Graham I, 568 F.3d at 440.  When Plaintiff left Defendants' business premises, he was aware that Defendants still had the CD containing the digital image of the Original Pelican Drawing. ECF No. 1, ¶ 36. However, this awareness alone did not establish any sort of blatant warning that Defendants would misappropriate the image as the "mere fact that a copyright owner has notice that another person also possessed its copyrighted material and may find it useful to copy should not and does not by itself constitute a storm warning of a possible infringement." Graham I, 568 F.3d at 440.

It was not Plaintiff's duty to continually investigate Defendants' business activities to discover whether or not Defendants were using Plaintiff's copyrighted work. The initial agreement between the parties failed, and Plaintiff returned to his home in Florida. After Plaintiff's September 18th letter refusing to meet any of Defendants' demands and threatening countersuit if Defendants pursued legal action ended the interaction between the parties, Plaintiff was justified in doing nothing to monitor Defendants' activities vis-a-vis the Original Pelican Drawing since Defendants' failure to respond to the letter could reasonably be taken as acquiescence.  See id. at 439 ("a copyright owner does not have a duty to ferret out potential acts of infringement before they occur.").

Defendants have failed to meet their burden of demonstrating that this case filing is beyond the time bar of the statute of limitations as the statute was tolled by the discovery rule. Accordingly, the motion to dismiss is denied.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRAIG POPOVICH,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 11-227Erie** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PELICAN LANDING, INC., et al.,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |

**O R D E R**

AND NOW, this 10th day of September, 2012;

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendants Pelican

Landing, Inc. d/b/a Pelican Landing II, William H. Singleterry, Mary C. Singleterry, and MOBS,

LLC [ECF No. 9] is denied.

A Case Management Conference will be scheduled by separate Order.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge